## LOFSKY *v.* MAUJER and others.

A mortgagee, whose debt is all due and is defectively secured, by procuring a receiver, obtains an equitable lien on the unpaid rents of the lands mortgaged.

Previous to the appointment of a receiver in a foreclosure suit, the owner of the equity of redemption by purchase from the mortgagor, had received from his tenant, a note for the rent accrued and a mortgage on personal property executed by a friend of the tenant for its further security ; but no actual payment had been made. *Held*, that there was no merger of the rent, but the landlord's right to distrain continued ; and that the receiver was entitled to the unpaid rent in preference to the owner of the equity of redemption.

September 9 ; October 4, 1845.

THIS was a suit to foreclose a mortgage for $2435, executed by Lewis Katen to the complainant, on lands in Newtown, Queen's County, dated September 23, 1841. There was a prior mortgage of $700; the premises were worth considerably less than the amount of the two liens ; and the mortgagor was insol-

---

(*a*) And see *Neesom* v. *Clarkson*, before Sir James Wigram, V. C. 4 Hare's R. 97.

vent. In October, 1842, Katen conveyed the premises, subject to the mortgage, to Daniel Maujer who took possession and continued it until the foreclosure. On filing the bill, April 13th, 1844, the complainant obtained an injunction restraining Maujer from collecting the rents or any securities received therefor; and in due course a receiver was appointed. After the cause was at issue, a decree of. foreclosure and sale was taken by consent, reserving the question as to the rents and securities.

The facts bearing upon that point were as follows. On the first of April, 1843, Maujer hired the mortgaged premises to Joseph S. Hixon for one year, at the rent of $150, payable quarterly. On the 2d of December, 1843, Maujer obtained for the year's rent, the joint promissory note of Hixon and his sister, payable at four months from December 1st, and a mortgage of the sister on her goods and chattels as further security. For the note and mortgage, Maujer gave Hixon a receipt, expressing that the note when paid, was to be in full of the year's rent, and was also to be in discharge of the mortgage on the chattels. The note was not paid when due, and Maujer through an officer, had seized the goods mortgaged; when the injunction suspended his proceedings.

The cause was heard for further directions on the single point, whether Maujer or the complainant, was entitled to the sum secured by the note and the mortgage on the chattels of Hixon.

*P. W. Turney* and *M. Hoffman,* for the complainant.

*C. Paget* and *J. N. Platt,* for the defendant Maujer.

THE ASSISTANT VICE-CHANCELLOR. There was no payment of the rent in question to Maujer, nor was it merged or extinguished by his taking the note, and the mortgage on the goods of Julia C. Hixon.

The idea of a payment, is fully negatived by the receipt which he gave, as well as by the statement in the answer, which omits to allege that the securities were accepted in satisfaction of the rent.

Instead of there being a merger, the note was a debt of a lesser

grade than the rent, and the mortgage was no debt at all. It went to secure the debt represented by the note.

In short, there is no doubt but that Maujer when this bill was filed had a right of distress for the rent in arrear.

It remains to be seen whether the complainant by his bill and the appointment of a receiver, became entitled to the rent which Maujer had secured, but had not collected.

The mortgage debt was all due, and the lands mortgaged were wholly inadequate to satisfy the amount. It appears also that the mortgagor was greatly embarrassed in his circumstances, if not insolvent; but this is perhaps, immaterial, Maujer having taken his conveyance from the mortgagor, subject to the mortgage.

It is well settled that in a case like this, the court of chancery will appoint a receiver of the lands mortgaged, and will restrain the mortgagor or his grantee from collecting the accrued rents, unpaid by the tenant, as well as the future rents. This is clearly the effect of what the Chancellor held in the case of *Howell* v. *Ripley*, (10 Paige, 43.)

The whole object of this proceeding, is to divert the unpaid rents from the mortgagor to the mortgagee.

The cases cited by the complainant's counsel, show that as between the mortgagor and the mortgagee, the latter has a *legal* right to the rent in arrear, after the mortgage becomes due. Where the lands were demised before the mortgage was given, the cases establish that the mortgagee might distrain for such rent; and they also prove that upon the tenant's attorning, he would have the same remedy upon a lease made by the mortgagor after the execution of the mortgage.

Here the lease was subsequent, and the tenant had not attorned. Previous to the revised statutes, there was a legal remedy in such a case, by the action of ejectment. That remedy is now taken away, but the right remains, and courts of equity enforce it by injunction and receiver.

In *Howell* v. *Ripley*, the Chancellor decided that the junior mortgagee who had resorted to this court in that mode, was entitled to the unpaid rents accrued, and that he should hold them against the prior mortgagee, until the latter availed himself of

the same remedy. And he considered that the collection of the rents by ther eceiver in behalf of the junior mortgagee, was equivalent to a collection of the same by such mortgagee in possession.

In the same case, he observed that the prior mortgagee, on obtaining a receiver, would intercept any rents accrued which the receiver first appointed had not actually collected.

The result of the law on the subject is, that a mortgagee whose debt is all due and is defectively secured; by filing his bill to foreclose his mortgage and procuring a receiver, obtains an equitable lien on the unpaid rents of the lands mortgaged.

In this case the rent was still due by virtue of the lease, it of right belonged to the mortgagee, and his bill having intercepted it, the amount collected pending the suit, must be paid to the complainant.

As to the point that the property from which the rent was collected, did not belong to the tenant; there are two answers to it. It was property upon the land demised, and for aught that appears, was subject to be distrained for the rent. And the mortgagee being entitled to the principal debt, the rent; was entitled to all the securities appurtenant to it.

Decree accordingly.